*283 OPINION OF THE COURT
Michael A. Ciaffa, J.
Decision upon Inquest
Plaintiff, Nassau Anesthesia Associates PC., provided anesthesia services to defendant, an uninsured individual, in connection with medical treatments that included open-heart surgery. Defendant survived the surgery, but was left with an anesthesia bill totaling $8,675.
When defendant failed to pay the bill, in full, plaintiff sued him for the balance allegedly owed ($8,000 as of February 2010). According to plaintiffs complaint, the amount of its bill “represents the usual and customary amount billed by the plaintiff for this type of service” (complaint 1i 6). Defendant’s pro se answer basically pleaded poverty: “Unemployment has run out ... As of now I have nothing” (answer dated Apr. 26, 2010).
Trial of the action was initially adjourned, at defendant’s request, based on correspondence indicating that defendant was “out of state seeking employment.” However, when defendant failed to appear for the rescheduled trial date, and his letter request for a further delay was denied, a default judgment on liability was granted, and the issue of damages was set down for an inquest.
Plaintiffs claim for damages is ripe for adjudication. Since a default by defendant in appearing does not constitute an admission as to damages, it remains plaintiffs burden to prove its damages through competent evidence. (See e.g. Paulson v Kotsilimbas, 124 AD2d 513 [1st Dept 1986].)
Plaintiffs proof at inquest failed to establish the existence of an “account stated” between the parties. Nor did plaintiff submit proof of its claim that defendant failed to pay an “agreed upon amount” (see complaint If 5). Although defendant’s answer alluded to an unfulfilled arrangement for making “agreed payment^],” the details of that arrangement were not fleshed out by plaintiffs submission at the inquest. Accordingly, plaintiffs entitlement to a damages award is dependent upon proof of “the fair and reasonable value” of its services. (See 83A NY Jur 2d, Physicians, Surgeons, and Other Healers § 207.)
The court’s determination of the “reasonable value” of plaintiffs services requires more than a ministerial examination of plaintiffs bills. (See Society of N.Y. Hasp. v Tyszkiewicz, 70 Misc 2d 592, 593 [Civ Ct, NY County 1972], revd on other *284 grounds 74 Misc 2d 178 [App Term, 1st Dept 1973].) “In determining reasonable compensation . . . , the fee usually charged by other practitioners of similar standing for similar services is a factor to be considered.” (61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 349.) So, too, “a patient’s strained financial condition” may be considered in determining the reasonableness of a medical provider’s charges. (83A NY Jur 2d, Physicians, Surgeons, and Other Healers § 208, citing inter alia Youngentob v Ginsberg, 192 Misc 1024 [Sup Ct, Kings County 1948].)
On the other hand, the mere fact that plaintiff may be paid lesser amounts by commercial insurers or government programs for similar services does not necessarily indicate that the amount charged to defendant is unreasonable. (See Huntington Hosp. v Abrandt, 4 Misc 3d 1, 3 [App Term 2004]; accord Sound Shore Med. Ctr. of Westchester v Segreto, 2008 WL 8096747 [Sup Ct, Westchester County 2008].) As the Court of Appeals recognized in the context of a dispute involving an insured patient’s coinsurance obligation, private insurers may be able to obtain “very substantial discount[s]” from medical providers for a variety of reasons, i.e., “volume of payments, promptness of payment, assurance of payment.” (See Flushing Hosp. & Med. Ctr. v Woytisek, 41 NY2d 1081, 1082 [1977].)
Nevertheless, in cases, like this, where a medical provider seeks a monetary judgment against an uninsured individual, the court cannot ignore the realities of today’s health care, marketplace. At the court’s request, plaintiff provided the court with information comparing the amounts charged to uninsured persons (such as defendant) and the amounts plaintiff would have accepted from major private insurers or the federal government under Medicare and Medicaid. The differences in payments are striking.
According to plaintiffs billing supervisor, “[a] person without insurance, such as the Defendant, . . . would pay $8,675.00” for plaintiffs anesthesia services. In contrast, if defendant had been covered by Blue Cross Blue Shield, United Healthcare, or Vytra, plaintiff would have been paid between $5,208.01 (Blue Cross Blue Shield) and $6,970 (United Healthcare). Medicare, in turn, would have paid plaintiff only $1,605.29. And if defendant were covered by Medicaid, plaintiff would have received just $797.50.
Each of the foregoing amounts represents a fee calculation that reflects, in one way or another, the supposed “value” of *285 plaintiffs services. Although plaintiff requests an award based upon its “uninsured patient” rates, it makes no claim that any of the lesser rates mentioned are “unreasonable” or that a lesser award would deny it “fair and reasonable” compensation. Consequently, at least in cases, such as this one, where plaintiff submits nothing more than a conclusory assertion from its billing supervisor that plaintiffs fees are “customary and standard,” the court concludes that plaintiffs “customary and standard” fees are not conclusive and binding. To the contrary, as recognized in Temple Univ. Hosp., Inc. v Healthcare Mgt. Alternatives, Inc. (832 A2d 501 [Pa Super Ct 2003]), the amounts “actually received” by medical providers from insurers are a far better indicator of the reasonable value of a provider’s services than the “full published charged” unilaterally set by the provider. (832 A2d at 508-510.)
The Temple court’s reasoning is quite compelling: “Reasonable value is the value paid by the relevant community” of payors. {Id. at 510.) Since hospitals and related providers rarely receive payment based upon their “published rates,” those rates cannot be deemed determinative in assessing the value of the services. Rather, “[reasonable value is what someone normally receives for a given service in the ordinary course of its business from the community it serves.” (Id.)
The Temple court went on to hold, in a case involving a managed care company’s liability for hospital charges, that “the relevant community . . . comprises the Hospital’s patients who are covered by insurance policies and federal programs.” {Id.) Since the “price” that the hospital “unilaterally” sets for the uninsured “bears no relationship to the amount typically paid for those services,” acceptance of the hospital’s published rates was found to be “untenable.” {Id.) The court thus concluded, upon the facts before it, that the hospital “should be awarded the average charge for the services at issue contained in contracts with government agencies and insurance companies.” {Id.)
The general approach adopted by the court in Temple makes a lot of sense to this court. Although courts are “generally ill equipped” to second-guess a medical provider’s determination of what its services are worth in the marketplace, the marketplace in this jurisdiction “has already set a reasonable price.” (See George A. Nation III, Obscene Contracts: The Doctrine of Unconscionability and Hospital Billing of the Uninsured, 94 Ky LJ 101, 136 [2005].) Ignoring that marketplace would be both *286 “bad law and bad policy.” (See Mark A. Hall and Carl E. Schneider, Patients as Consumers: Courts, Contracts, and the New Medical Marketplace, 106 Mich L Rev 643, 686 [2008].) As one noted health economist explained at a congressional hearing, a medical provider’s standard “price list” cannot be considered “reasonable” unless it reflects “what is actually being charged in the marketplace.” (Id. at 687.) “A more realistic standard is what insurers actually pay and what [medical providers] have been willing to accept.” (Id.)
For these reasons, the court, as factfinder at this inquest, declines plaintiffs request for an award of damages based upon its so-called “usual and customary” fee schedule. In the absence of other evidence establishing plaintiffs entitlement to the full amount claimed, the court concludes that plaintiff should receive an award equal to the average amount that it would have accepted as full payment from third-party payors such as private insurers and federal health care programs. (See Temple, supra.) That amount, as calculated by plaintiffs billing manager, equals $4,252.11.
Finally, the court emphasizes that its ruling is intended to apply only to cases, like this one, where the medical provider failed to prove either the defendant’s agreement to pay the plaintiffs “uninsured patient” fee, or prove the defendant’s financial ability to pay such a fee. As far as the instant record shows, defendant, at one time, was willing and able to make small payments to the plaintiff. However, due to the absence of health insurance, and certain financial setbacks, he was unable to pay more. While such an inability to pay, by itself, does not excuse him from his obligation to pay plaintiff an amount equal to the reasonable value of plaintiffs services, it militates against any claim by plaintiff it should obtain a judgment for far more than the amount it would have received from a more financially stable insured patient.
Accordingly, plaintiff may submit judgment, on notice, in the principal amount of $4,252.11, plus interest, costs and applicable disbursements.